IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| JOSHUA W. KRUGER, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 18-cv-512-NJR-RJD |
| | ) | |
| JACQUELINE LASHBROOK, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Joshua Kruger, an inmate of the Illinois Department of Corrections ("IDOC"), initially filed this action pursuant to 42 U.S.C. § 1983 on February 28, 2018. On April 9, 2018, the action was severed into eight new cases (*see* Doc. 6). Kruger subsequently filed a "Motion to Reconsider and for Leave to File an Amended Complaint" (Doc. 7). In his request for leave to file an amended complaint, Kruger explains that the crux of his complaint is that defendants are or were acting in conspiracy together to deprive him of his constitutional rights. For this reason, Kruger asserts that severance is not proper, and he seeks to name additional defendants and include additional allegations and claims in his amended complaint. The Court denied Kruger's request to reconsider its previous severance order, but granted him leave to file an amended complaint, noting it is subject to review under 28 U.S.C. § 1915A (*see* Doc. 10).[1]

---

[1] The procedural posture of this matter is fully set forth in the undersigned's case management order entered on March 4, 2019 (Doc. 17). The Court only reiterates the background of this matter here as it relates to the merits review of the Amended Complaint.

## DISCUSSION

As articulated in the Court's previous screening order, under 28 U.S.C. § 1915A, the Court is directed to screen complaints filed by prisoners and "identify cognizable claims or dismiss the complaint, or any portion of the complaint" if the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted" or if it "seeks monetary relief from a defendant who is immune from such relief."

In his Amended Complaint, Kruger maintains the general allegations previously screened by the Court; however, he has provided additional detail concerning some allegations, and he names additional defendants. More specifically, Kruger alleges that prison officials at Pontiac Correctional Center ("Pontiac") and Menard Correctional Center ("Menard") have acted to, or implemented policies and practices that, stymie the delivery of his mail and various publications and burden his ability to practice his religion. Kruger further alleges that officials have taken actions against him in retaliation for filing grievances and lawsuits. Kruger seeks to proceed on the following counts:

> Count 1: First Amendment claim against Butler and John Does 1 and 13 for retaliating against Kruger for pursing litigation against IDOC staff and making statements critical of Menard mailroom staff in 2016 grievances.
>
> Count 2: First Amendment retaliation claim against Bradley, Butler, Benton, and Baldwin for rejecting the book Kruger ordered, <u>The Truth: An Uncomfortable Book about Relationships</u>, without a legitimate penological reason.
>
> Count 3: First Amendment claim against John Does 1 and 13 for rejecting four football preview magazines in retaliation for Kruger filing grievances about the mailroom staff at Menard.

Count 4: First Amendment claim against Bradley, Shemonic, Butler, Baldwin, and Benton for rejecting Kruger's June 2016 issue of <u>Prison Legal News</u> in June or July 2016.

Count 5: First Amendment claim against Lashbrook and Does 1-3 for retaliating against Kruger for filing a grievance in March 2017 directed at Lashbrook and John Doe 1 complaining about the mailroom.

Count 6: First Amendment claim against John Does 1 and 3, Lashbrook, Phoenix, and Baldwin for rejecting Kruger's requested book, <u>Tools for Titans</u>, in April 2017 with no legitimate penological purpose.

Count 7: First Amendment and Religious Land Use and Institutionalized Persons Act ("RLUIPA") claims against John Does 1 and 2 for rejecting receipt of religious greeting cards ordered by Kruger.

Count 8: First Amendment claim against Butler, Rees, Lashbrook, Jones, and Benton for adopting a policy that effectively banned Kruger's brother, Joseph Kruger, from visiting Kruger.

Count 9: First Amendment claim against Butler, John Doe 12, and Baldwin for constructing legal call booths that allowed Kruger's privileged conversations with his attorney to be overheard in 2016 and 2017.

Count 10: First Amendment, Fourteenth Amendment, and RLUIPA claims against Baldwin, Butler, Lashbrook, Keim, Kennell, Harner, and John Does 4-11 for refusing to allow Kruger to fully practice his Asatru-Odinism religious faith by prohibiting him from possessing runestones or runic flash cards, disallowing congregate worship, and denying religious feast trays.

Count 11: First Amendment and RLUIPA claims against Baldwin, Butler, Hutchinson, and Lashbrook for exacting, adopting, and/or enforcing a policy and practice of refusing all Asatru-Odinism prisoners the right to wear their religious medallions.

Count 12: Fourteenth Amendment due process claim against Baldwin, Keim, and John Does 4-11 for denying Kruger due process and retaliating against him by refusing to answer his grievances and letters complaining about religious discrimination.

Count 13: First Amendment claim against Butler, Lashbrook, and John Doe 1 for failing to adequately staff and train the mailroom staff resulting in unconstitutional mail delays, unjust censorship, and confiscation and rejection of publications.

*Severance*

In *George v. Smith*, 507 F.3d 605 (7th Cir. 2007), the Seventh Circuit emphasized that unrelated claims against different defendants belong in separate lawsuits. *George*, 507 F.3d at 607 (citing 28 U.S.C. § 1915(b)). The Seventh Circuit has warned district courts not to allow inmates "to flout the rules for joining claims and defendants, see Fed. R. Civ. P. 18, 20, or to circumvent the Prison Litigation Reform Act's fee requirements by combining multiple lawsuits into a single complaint." *Owens v. Godinez*, 860 F.3d 434, 436 (7th Cir. 2017). When deciding whether to sever claims, the Court considers Federal Rules of Civil Procedure 18 and 20.

Rule 20 prohibits a plaintiff from asserting unrelated claims against different defendants or sets of defendants in the same lawsuit. Under Rule 20, multiple defendants may not be joined in a single action unless the plaintiff asserts at least one claim to relief against each respondent that arises out of the same transaction or occurrence or series of transactions or occurrences and presents a question of law or fact common to all. *George*, 507 F.3d at 607; 3A *Moore's Federal Practice* § 20.06, at 2036–45 (2d ed. 1978).

Rule 18 allows a party to join unrelated claims against defendants in a lawsuit.

However, this rule applies only after the requirements for joinder of parties have been satisfied under Rule 20. *Intercon Research Ass'n, Ltd. v. Dresser Ind., Inc.*, 696 F.2d 53, 57 (7th Cir. 1983) (citing 7 Charles Alan Wright et al., *Federal Practice & Procedure*). Thus, the "core group" of allowable defendants must be determined under Rule 20 before a plaintiff may join additional unrelated claims against one or more of those defendants under Rule 18. There is no allowance, under either Rule 18 or Rule 20, for a party to join claims involving any defendant outside the "core group" identified under Rule 20.

In this case, Kruger asserts different claims against various defendants for four different transactions or series of transactions: (1) claims pertaining to the confiscation, rejection, and/or censorship of his mail and/or publications, as well as claims pertaining to alleged acts of retaliation related to his complaints about the same (Counts 1-7 and 13, directed against Butler, Benton, Bradley, Baldwin, Shemonic, Lashbrook, Phoenix, and John Does 1-3 and 13); (2) a claim pertaining to Kruger's brother being banned from visitation (Count 8, directed against Butler, Rees, Lashbrook, Jones, and Benton); (3) a claim pertaining to legal call booths (Count 9, directed against Butler, John Doe 12, and Baldwin); and (4) claims pertaining to Kruger's religious practices and associated retaliatory acts (Counts 10-12, directed against Baldwin, Butler, Lashbrook, Keim, Kennell, Harner, Hutchinson, and John Does 4-11).

The Amended Complaint suggests that the constitutional violations at issue in the first set of claims are the result of a system of decision making that was influenced by the same set of policies and/or practices. Thus, these claims appear to stem from the same

series of transactions or occurrences.² They also appear to involve at least one common question of law or fact. Accordingly, Counts 1-7 and 13 are properly joined pursuant to Rule 20 and will proceed in this action. The Court notes, however, that if it subsequently determines a claim has been misjoined, such claim may be severed at any time. FED. R. CIV. P. 21. Moreover, the Court has broad discretion under Rule 21 to sever even properly-joined claims, *see UWM Student Ass'n v. Lovell*, 888 F.3d 854, 863 (7th Cir. 2018); *Vermillion v. Levenhagen*, 604 F. App'x 508, 513 (7th Cir. 2015), and under Rule 42(b) to separate claims for trial. *Houseman v. U.S. Aviation Underwriters*, 171 F.3d 1117, 1121 (7th Cir. 1999). Thus, as the case progresses, the Court remains open to reconsidering the issue *sua sponte* or on motion.

Although the first set of claims will proceed together in this action, the remaining three sets of claims must be severed into three new actions. Kruger's claim in Count 8, concerning an alleged policy that effectively banned his brother from visiting, has nothing to do with the claims proceeding in this action (or with any of Kruger's other claims). The same is true with regard to Kruger's claim in Count 9, which pertains to legal call booths. Accordingly, Counts 8 and 9 are not properly joined under Rule 20. Further, because some of the defendants named in connection with Counts 8 and 9 are outside the

---

² Courts have not established bright-line rules for determining when claims arise out of the same "series of transactions or occurrences" such that joinder should be permitted under Rule 20. See *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974); 7 Charles Alan Wright *et al.*, Federal Practice and Procedure § 1653 (3d ed.) Wright & Miller, 7 Fed. Prac. & Proc. Civ. § 1653 (West 3d ed.). Instead, courts take a case-by-case approach, often concluding that the transaction or occurrence test is satisfied when there is a logical relationship between the separate causes of action. *See In re EMC Corp.*, 677 F.3d 1351, 1356 (Fed. Cir. 2012); *Mosley*, 497 F.2d at 1333; 7 Wright et al., *supra*, § 1653.

"core group" of defendants identified in connection with the first set of claims, Counts 8 and 9 are not properly joined under Rule 18.

For similar reasons, the fourth set of claims (Counts 10-12) are not properly joined with the claims proceeding in this action (or with any of Kruger's other claims) and must be severed into a new action. This the fourth set of claims, which pertains to prohibitions on Kruger's religious practices and retaliatory acts for complaints concerning them, will proceed together in a single action pursuant to Rule 20.

Therefore, as set forth above, Counts 1-7 and 13, directed against Butler, Benton, Bradley, Baldwin, Shemonic, Lashbrook, Phoenix, and John Does 1-3 and 13, shall remain in this action, and the merits of these claims will be reviewed in this Order. The Court shall sever Count 8, directed against Butler, Rees, Lashbrook, Jones, and Benton, into a separate action, Count 9, directed against Butler, John Doe 12, and Baldwin, into another separate action, and Counts 10-12, directed against Baldwin, Butler, Lashbrook, Keim, Kennell, Harner, Hutchinson, and John Does 4-11, into yet another action. These separate actions will have newly assigned case numbers and shall undergo preliminary review pursuant to § 1915A after the new case numbers and judge assignments have been made.

*Merits Review of Counts 1-7 and 13*

**Count 1 – First Amendment retaliation claim against Butler, Doe 1, and Doe 13**

Kruger alleges that John Doe 1, Butler, and "at least one other Doe, maybe more," opened 21 pieces of his legal mail from April 5, 2016 to January 20, 2017. Kruger alleges his mail was opened in retaliation for filing grievances in March and April 2016 concerning Menard mailroom staff and for filing lawsuits against IDOC staff.

Prison officials may not retaliate against inmates for filing grievances, lawsuits, or otherwise complaining about their conditions of confinement. *See, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988). The issue in a retaliation claim is whether the plaintiff experienced an adverse action that would likely deter First Amendment activity in the future, and if the First Amendment activity was "at least a motivating factor" in the defendants' decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009). "A complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'" *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) (citation omitted).

Here, Kruger connects the alleged retaliatory action taken by Butler and the John Does to his preceding filing of grievances and lawsuits. Although the details concerning this claim are sparse, at this early juncture, Kruger's retaliation claim survives § 1915A review; however, the John Doe Defendants (1 and 13), must be identified with particularly before service of the Complaint can be made on them.

**Count 2 – First Amendment retaliation claim against Bradley, Butler, Benton, and Baldwin**

Kruger alleges Bradley denied him receipt of the book, <u>The Truth</u>, on February 11, 2016, asserting it was on the "disapproved list." Kruger claims that Butler approved Bradley's decision on February 16, 2016. Kruger filed a grievance concerning the decision, but the grievance was denied by Benton and Baldwin. According to Kruger, <u>The Truth</u> is

not on the "disapproved list"; thus, he claims the only reason he is not yet in receipt of the book is because he filed a lawsuit at Pontiac naming members of the IDOC Central Publication Review Committee.

As set forth above, prison officials may not retaliate against inmates for filing grievances, lawsuits, or otherwise complaining about their conditions of confinement. *See, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988). The issue in a retaliation claim is whether the plaintiff experienced an adverse action that would likely deter First Amendment activity in the future, and if the First Amendment activity was "at least a motivating factor" in the defendants' decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 551 (7th Cir. 2009). "A complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'" *Zimmerman v. Tribble*, 226 F.3d 568, 573 (7th Cir. 2000) (citation omitted).

Here, Kruger connects his First Amendment activity (filing a lawsuit) with Defendants' censorship of a publication for no legitimate penological purpose, which courts have found to constitute an adverse action sufficient to support a retaliation claim. *See Carter v. Radtke*, No. 10-cv-510-WMC, 2014 WL 5494679, *15 (W.D. Wis. Oct. 30, 2014). For these reasons, Kruger may proceed on Count 2 in this action.

**Count 3 – First Amendment retaliation claim against Does 1 and 13**

Kruger alleges he never received four football magazines sent by his brother. He claims Doe 1 and Doe 13 intentionally and arbitrarily threw these magazines away in

retaliation for his filing grievances concerning the mailroom at Menard. As set forth above, prison officials may not retaliate against inmates for filing grievances, lawsuits, or otherwise complaining about their conditions of confinement. *See, e.g.*, *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012); *Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988). Because Kruger connects his filing of grievances with Defendants' alleged censorship of his publications, Kruger may proceed on Count 3 in this action; however, the John Doe Defendants (1 and 13) must be identified with particularly before service of the Complaint can be made on them.

**Count 4 – First Amendment censorship claim against Bradley, Butler, Benton, Shemonic, and Baldwin concerning rejection of <u>Prison Legal News</u>**

As it relates to Count 4, Kruger alleges Defendant Shemonic denied him receipt of the June 2016 issue of <u>Prison Legal News</u> on June 23, 2016, without any reason and without providing him the opportunity to respond. Kruger subsequently grieved Shemonic's denial and included general complaints concerning the mailroom staff. On July 21, 2016, Kruger was notified that Bradley "disapproved" his receipt of <u>Prison Legal News</u> and Defendant Butler approved the censorship on July 20, 2016. Benton and Baldwin also concurred with the censorship.

The First Amendment's guarantee of freedom of speech provides protection against censorship of a prisoner's incoming and outgoing correspondence. *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir. 1999) (citations omitted). However, "the legitimate governmental interest in the order and security of penal institutions justifies the

imposition of certain restraints on inmate correspondence." *Procunier v. Martinez*, 416 U.S. 396, 412-13 (1974). For incoming mail, a court will uphold regulations or actions restricting inmate mail if they are "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). As Kruger claims that Defendants denied him receipt of a publication without a valid reason, he may proceed at this time on Count 4 against Bradley, Butler, Benton, Shemonic, and Baldwin.

**Count 5 – First Amendment retaliation claim against Lashbrook and John Does 1-3**

Kruger alleges Lashbrook and Does 1-3 retaliated against him for filing a March 1, 2017 grievance concerning the mailroom. This grievance specifically identified Lashbrook. Kruger asserts that following the filing of this grievance, Lashbrook and Does 1-3: (1) rejected a publication, Tools for Titans, on March 14, 2017; (2) rejected five religious greeting cards on April 28, 2017; and (3) delayed processing his incoming and outgoing mail for months at a time. Based on these allegations, Kruger has stated a First Amendment retaliation claim against Lashbrook and Does 1-3, Count 5 may proceed in this action.

**Count 6 – First Amendment claim against John Does 1 and 3, Lashbrook, Phoenix, and Baldwin concerning rejection of Tools for Titans**

In support of this claim, Kruger alleges John Does 1 and 3 rejected a book, Tools for Titans, because it was "oversized." Kruger grieved the rejection, asserting the only basis for the rejection was retaliation. In this grievance he also complained that Lashbrook failed to adequately train the mailroom staff; Phoenix and Baldwin approved the rejection on September 5, 2017. Insofar as Kruger alleges that John Does 1 and 3, as well as Phoenix

and Baldwin, denied his receipt of a publication without a legitimate penological purpose, he may proceed on Count 6 in this action against them. The John Doe Defendants (1 and 3) must be identified with particulary, however, before service of the Complaint can be made on them. Because there is no allegation that Lashbrook was involved in the alleged censorship, she will be dismissed without prejudice from this count.

**Count 7 – First Amendment and RLUIPA claims against John Does 1 and 2 for rejecting religious greeting cards**

Kruger alleges that on April 8, 2017, he ordered five religious greeting cards from an outside vendor. Lashbrook purportedly approved the purchase. Kruger further asserts that on April 28, 2017, John Does 1 and 2 rejected the greeting cards and prevented him from receiving them in retaliation for filing grievances in the past. Kruger claims that rejection of the greeting cards violated his First Amendment rights, as well as RLUIPA.

This claim must be dismissed without prejudice. Insofar as Kruger alleges the cards were withheld on the basis of retaliation, that claim is addressed in Count 5. Kruger's attempt to bring a First Amendment censorship claim fails because he alleges the only motive behind the rejection of his greeting cards was retaliation. Kruger's allegations also fail to state a First Amendment free exercise claim and RLUIPA claim as there is no indication that the religious greeting cards at issue were instrumental to his religious practices and that refusal of them hindered his religious practices. For these reasons, Count 7 is dismissed without prejudice.

**Count 13 – First Amendment claim against Butler, Lashbrook, and John Doe 1**

Kruger seeks to bring a First Amendment claim against Butler, Lashbrook, and John Doe 1 for failing to adequately staff and train the mailroom staff. Kruger asserts that their failure to train resulted in unconstitutional mail delays, unjust censorship, and confiscation and rejection of certain publications. Kruger further alleges these individuals turned a blind eye to the unconstitutional mailroom practices. Although the allegations against Butler, Lashbrook, and Doe 1 are somewhat vague, a generous reading of Kruger's amended complaint reveals a basis for attributing key decisions concerning the policies and practices of the mailroom that resulted in the alleged unconstitutional censorship to Butler, Lashbrook, and Doe 1. Kruger may therefore proceed on Count 13.

*Identification of Unknown Defendants*

With respect to the counts remaining in this action, Kruger will have the opportunity to engage in limited discovery to ascertain the identity of the unknown defendants. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). Warden Lashbrook, in her official capacity, will be responsible for responding to discovery aimed at identifying these unknown individuals. Guidelines for discovery will be set in a separate Order. Once the names of the unknown defendants are discovered, Kruger shall file a motion to substitute the newly identified defendants in place of the generic designations in the case caption and throughout the Amended Complaint.

DISPOSITION

For the reasons set forth above, **Count 7** is **DISMISSED without prejudice** for failure to state a claim upon which relief may be granted. Defendant Lashbrook is

**DISMISSED without prejudice** from **Count 6**, but she remains a defendant in Counts 5 and 13. Defendant Lashbrook, in her official capacity, will be responsible for responding to discovery aimed at identifying the unknown defendants remaining in this action.

Pursuant to Federal Rules of Civil Procedure 18 and 20, Kruger's claims in Counts 8-12, which are unrelated to the claims in Counts 1-7 and 13, are **SEVERED** into three new cases as follows:

| | |
|---|---|
| **First Severed Case:** | **Count 8** against Butler, Rees, Lashbrook, Jones, and Benton for adopting a policy that effectively banned Kruger's brother, Joseph Kruger, from visiting Kruger, in violation of the First Amendment. |
| **Second Severed Case:** | **Count 9** against Butler, John Doe 12, and Baldwin for constructing legal call booths that allowed Kruger's privileged conversations with his attorney to be overheard in 2016 and 2017, in violation of the First Amendment. |
| **Third Severed Case:** | **Count 10** against Baldwin, Butler, Lashbrook, Keim, Kennell, Harner, and John Does 4-11 for refusing to allow Kruger to fully practice his Asatru-Odinism religious faith by prohibiting him from possessing runestones or runic flash cards, disallowing congregate worship, and denying religious feast trays in violation of the First Amendment, Fourteenth Amendment, and RLUIPA; **Count 11** against Baldwin, Butler, Hutchinson, and Lashbrook for adopting and/or enforcing a policy and practice of refusing all Asatru-Odinism prisoners the right to wear their religion medallions in violation of the First Amendment and RLUIPA; and **Count 12** against Baldwin, Keim, and John Does 4-11 for denying Kruger due process and retaliating against him by refusing to answer his grievances and letters complaining about religious discrimination in violation of the |

Fourteenth Amendment.

In each new case, the Clerk of Court is **DIRECTED** to file the following documents:

(1) This Memorandum and Order;
(2) The Amended Complaint (Doc. 11);
(3) Plaintiff's motion to proceed *in forma pauperis* (Doc. 2); and
(4) Plaintiff's motion for recruitment of counsel (Doc. 3)

**IT IS FURTHER ORDERED** that the only remaining claims in this action are as follows:

**Count 1:** First Amendment claim against Butler and John Does 1 and 13 for retaliating against Kruger for pursing litigation against IDOC staff and making statements critical of Menard mailroom staff in 2016 grievances.

**Count 2:** First Amendment retaliation claim against Bradley, Butler, Benton, and Baldwin for rejecting the book Kruger ordered, The Truth: An Uncomfortable Book about Relationships, without a legitimate penological reason.

**Count 3:** First Amendment claim against John Does 1 and 13 for rejecting four football preview magazines in retaliation for Kruger filing grievances about the mailroom staff at Menard.

**Count 4:** First Amendment claim against Bradley, Shemonic, Butler, Baldwin, and Benton for rejecting Kruger's June 2016 issue of Prison Legal News in June or July of 2016.

**Count 5:** First Amendment claim against Lashbrook and Does 1-3 for retaliating against Kruger for filing a grievance in March 2017 directed at Lashbrook and John Doe 1 complaining about the mailroom.

**Count 6:** First Amendment claim against John Does 1 and 3, Phoenix, and Baldwin for rejecting Kruger's requested book, Tools for Titans, in April 2017 with no legitimate penological purpose.

**Count 13:** First Amendment claim against Butler, Lashbrook, and John Doe 1 for failing to adequately staff and train the mailroom staff resulting in unconstitutional mail delays, unjust

censorship, and confiscation and rejection of publications.

This case shall now be captioned as: **JOSHUA W. KRUGER, Plaintiff, vs. KIMBERLY BUTLER, TYLER BRADLEY, SHERRY BENTON, JOHN R. BALDWIN, DAVID SHEMONIC, JACQUELINE LASHBROOK, MELISSA PHOENIX, and JOHN DOES 1-3 and 13**.

**IT IS FURTHER ORDERED** that Defendants **ALEX JONES, WILLIAM REES, STEPHEN KEIM, HOWARD HARNER, ELDON KENNELL, HUTCHINSON, and JOHN DOES 4-12** are **TERMINATED** from *this* action with prejudice.

As to **Counts 1-6 and 13**, which remain in *this case*, the Clerk of Court shall prepare for Defendants **KIMBERLY BUTLER, TYLER BRADLEY, SHERRY BENTON, JOHN R. BALDWIN, DAVID SHEMONIC, JACQUELINE LASHBROOK, and MELISSA PHOENIX**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk of Court is **DIRECTED** to mail these forms, a copy of the Amended Complaint, and this Memorandum and Order to Defendants' places of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the address provided by Plaintiff, the employer shall furnish the Clerk with that Defendant's current work address, or, if not

known, his or her last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file, nor disclosed by the Clerk.

Service shall not be made on Defendants John Does 1-3 and 13 until Kruger has identified them by name in a properly filed motion for substitution of parties. Kruger is **ADVISED** that it is his responsibility to provide the Court with the names and service addresses for these individuals.

Kruger is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

DATED:  March 5, 2019

*[signature]*

_____
**NANCY J. ROSENSTENGEL
United States District Judge**