IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JOSHUA W. KRUGER,                              )
                                               )
       Plaintiff,                              )
                                               )
       v.                                      )          Case No.   19-cv-268-RJD
                                               )
JOHN R. BALDWIN, et al.,                       )
                                               )
       Defendants.                             )

**ORDER**

**DALY, Magistrate Judge:**

Plaintiff Joshua Kruger, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed this lawsuit pursuant to 42 U.S.C. § 1983 alleging his constitutional rights were violated while he was incarcerated at Menard Correctional Center ("Menard") and Pontiac Correctional Center ("Pontiac"). Plaintiff alleges the practice of his religion was burdened insofar as he was not allowed to possess runestones or runic flashcards, have monthly feast trays, participate in congregate worship, or wear religious medallions. Plaintiff also alleges he advised staff and wrote grievances concerning these limitations, but to no avail. Plaintiff's original complaint was screened under 28 U.S.C. §191A, and he was subsequently allowed to file two amended complaints. Plaintiff now proceeds on the following claims set forth in his Third Amended Complaint (Doc. 125):

> Count One:   First Amendment claim against Jeffreys, Baldwin, Butler, Lashbrook, Keim, Williams, Adamson, McCarty, Beekman, Walker, Parrack, Easton, Lambert-Goheen, Norman-Rees, Claycomb, Wilhelm, and Harner for refusing to allow Plaintiff to fully practice his Asatru-Odinist faith by prohibiting him from possessing runestones or runic flashcards, disallowing congregate worship, and denying religious feast trays.

Count Two:    RLUIPA claim against Jeffreys, Baldwin, and Keim for refusing to allow Plaintiff to fully practice his Asatru-Odinist faith by prohibiting him from possessing runestones or runic flashcards, disallowing congregate worship, and denying religious feast trays; and

Count Three:    First Amendment and RLUIPA claim against Jeffreys, Baldwin, Butler, Hutchinson, Lashbrook, Wills, and Ewert for enacting, adopting, and/or enforcing a policy and practice of refusing all Asatru-Odinist prisoners the right to wear their religious medallions while at Menard.

The Warden of Pontiac, Teri Kennedy, was added as a defendant only in her official capacity for the purpose of carrying out any injunctive relief.    Pursuant to Federal Rule of Civil Procedure 25(d), the current Warden of Pontiac, Mindi Nurse, has been automatically substituted in her place.

Defendants filed a motion for summary judgment that is now before the Court (Doc. 151). Plaintiff filed a timely response (Doc. 154).   For the reasons set forth below, the Motion is **GRANTED IN PART AND DENIED IN PART**.

As a preliminary matter, the Court addresses some ambiguities present in the characterization of Count Three.   First, as set forth in the Court's initial screening order (Doc. 10), the RLUIPA portion of the claim survives only as to Baldwin.   Second, although the First Amendment claim references the enactment, adoption, or enforcement of a "policy and practice," based on the inclusion of multiple defendants and the allegations against the same, the Court clarifies that said claim has only been allowed to proceed against the named Defendants (Jeffreys, Baldwin, Butler, Hutchinson, Lashbrook, Ewert, and Wills) in their individual capacities.   The Court's analysis below will reflect the same.

## I.   Legal Standard

Summary judgment must be granted "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000).   The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party.   *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396.

The initial summary judgment burden of production is on the moving party to show the court that there is no reason to have a trial.   *Celotex*, 477 U.S. at 323; *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013).   The moving party may satisfy its burden of production in one of two ways.   It may present evidence that affirmatively negates an essential element of the non-moving party's case, *see* Fed. R. Civ. P. 56(c)(1)(A), or it may point to an absence of evidence to support an essential element of the non-moving party's case without actually submitting any evidence, *see* Fed. R. Civ. P. 56(c)(1)(B).   *Celotex*, 477 U.S. at 322-25; *Modrowski*, 712 F.3d at 1169.   Where the moving party fails to meet its strict burden, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion.   *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings, but must present specific facts to show that a genuine issue of material fact exists.   *Celotex*, 477 U.S. at 322-26; *Anderson*, 477 U.S. at 256-57; *Modrowski*, 712 F.3d at 1168.   A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574 (1986).   Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented."   *Anderson*, 477 U.S. 252.

## II.   Exhaustion of Administrative Remedies

Defendants first argue Plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit.   Plaintiff asserts Defendants waived this affirmative defense and they should not be entitled to summary judgment on this basis.

Plaintiff filed this action on March 6, 2019.   Defendants Baldwin, Butler, Hutchinson, Lashbrook, Keim, Harner, and Kennedy were served and filed their answer on November 1, 2019 (Doc. 32).   In their answer, Defendants pled the affirmative defense of exhaustion of administrative remedies.   An Initial Scheduling and Discovery Order was entered on November 26, 2019 (Doc. 36).   Pursuant to said Order, Defendants were directed to file any motions for summary judgment on the issue of exhaustion of administrative remedies by January 28, 2020. This Order also indicated that any subsequently added parties were to file any motions for summary judgment for failure to exhaust administrative remedies within 60 days from the date the party files its answer.

On January 31, 2020, Defendants Baldwin, Butler, Harner, Hutchinson, Keim, Kennedy, and Lashbrook filed a motion to withdraw their affirmative defense of exhaustion that was granted (Docs. 48 and 51).

Plaintiff subsequently filed a Second Amended Complaint that identified the John Doe Defendants as Alyssa Williams, George Adamson, Leslie McCarty, Echo Beekman, Lu Walker, Jennifer Parrack, Christopher Easton, Lauren Lambert-Goheen, Karen Norman-Rees, James

Claycomb, and Chase Wilhelm (Doc. 56).   Plaintiff was allowed to file a Third Amended Complaint on March 26, 2021 that named as additional defendants Anna Ewert, Anthony Wills, and Robert Jeffreys (Docs. 124 and 125).   Defendants filed their answer to the Third Amended Complaint on May 27, 2021, wherein they set forth an affirmative defense of exhaustion of administrative remedies.   Defendants were subsequently granted leave to file an amended answer that invoked a statute of limitations affirmative defense.

The Court entered a Scheduling Order on April 6, 2021, following the filing of Plaintiff's Third Amended Complaint (Doc. 129).   This Scheduling Order was directed at discovery on the merits of the case and indicated that any dispositive motions on the merits of Plaintiff's claims were to be filed by March 4, 2022.   This deadline was extended on request of Defendants, and they ultimately filed their motion for summary judgment now before the Court on April 18, 2022 (Docs 151 and 152).

In their motion for summary judgment, Defendants assert that although the Seventh Circuit prefers that exhaustion issues be resolved before the parties conduct merits discovery and move for summary judgment, it held in *White v. Bukowski*, 800 F.3d 392 (7th Cir. 2015), that the issue can be considered at a later date under certain circumstances.   In *Bukowski*, the Seventh Circuit allowed Defendants to raise the affirmative defense of exhaustion about a year and a half into merits discovery.   *Id.* at 394.   In so doing, the Seventh Circuit remarked that the defendants raised the defense in their answer to the plaintiff's complaint and there was no indication that the defendants' delay in pursuing said defense harmed the plaintiff.

The circumstances here are distinguishable from those relied on in *Bukowski*.   First, it does not appear there was any deadline to file a motion for summary judgment on the issue of

exhaustion imposed by the Court in *Bukowski*. Here, the Court's Initial Scheduling and Discovery Order not only imposed a deadline of January 28, 2020 to file dispositive motions on the issue of exhaustion, but it directed late-appearing parties, such as defendants added through an amended complaint, to file any such motions within 60 days of filing an answer.

As stated by the Seventh Circuit in *Bowman v. Korte*, "[s]cheduling orders and court-imposed deadlines matter." 962 F.3d 995, 998 (7th Cir. 2020). Federal Rule of Civil Procedure 6(b)(1)(B) is clear that "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time … on motion made after the time has expired if the party failed to act because of excusable neglect."

Defendants in this instance clearly failed to act in accordance with this Court's Orders in filing a motion for summary judgment on the issue of exhaustion. Despite the untimeliness of their motion, they make no effort to set forth any good cause or excusable neglect to allow for consideration of the issue[1].

Defendants' failure to establish excusable neglect and good cause in this instance is even further complicated by the fact that a number of defendants – Baldwin, Butler, Harner, Hutchinson, Keim, Kennedy, and Lashbrook – withdrew their affirmative defense of exhaustion. While the Court understands Defendants' position that said defense was reasserted in their answer to Plaintiff's Third Amended Complaint, the Court finds this circumstance, at the very least, caused unnecessary and avoidable confusion, particularly when considering Plaintiff's status as a pro se litigant. Plaintiff represents that because of Defendants' affirmative withdrawal of the

---

[1] In *Thompson v. Swisher*, Case No. 19-cv-1058-RJD, 2022 WL 2817438 (S.D. Ill. July 19, 2022), the undersigned allowed the defendants to file a motion for summary judgment on the issue of exhaustion of administrative remedies after time had expired. *Thompson* is easily distinguishable from the case at hand. In particular, in *Thompson*, the plaintiff failed to respond to said motion or demonstrate any harm caused by the late filing, and the defendants had never sought to withdraw the defense.

defense of exhaustion he did not conduct any further discovery regarding the same, and that he was "sandbagged" with the filing of the motion now at bar.   The Court agrees and finds that due to Defendants' failure to bring this issue to the Court within the time prescribed, Plaintiff was necessarily hindered in his ability to conduct discovery on the issue.   The Court also notes Defendants were granted leave and filed an amended answer on March 3, 2022.   The filing of this amended answer did not "reset" the 60-day timeframe in which they were required to file dispositive motions on the issue of exhaustion.   The amended answer only allowed Defendants to set forth an affirmative defense invoking the statute of limitations.

Based on the foregoing, the Court finds that Defendants' invocation of their affirmative defense of exhaustion of administrative remedies is untimely, and the substance of the argument cannot be considered.   Summary judgment will not be awarded on this basis.

### III.   Statute of Limitations

Defendants assert Plaintiff's claims arising from his incarceration at Pontiac Correctional Center ("Pontiac") are barred by the statute of limitations.   In support of this argument, Defendants assert the record is void of any written grievances or requests from Plaintiff to the chaplain for runestones or seeking to congregate to worship from November 2013 to October 2015.   Defendants further assert Plaintiff's last request for religious trays at Pontiac was on July 6, 2015, and urges the Court to adopt this date as the accrual date for his religious tray claim.   Based on these dates, Defendants assert Plaintiff's filing date of February 28, 2018 was out of time.

Plaintiff disagrees, and argues July 6, 2015 should not be the accrual date for his cause of action because Chaplain Kennell responded to said request indicating he would respond to the same after he received advice from Chaplain Keim and the Religious Practice Advisory Board

("RPAB").   Plaintiff asserts he never received a further response from Kennell and, as such, his statute of limitations period has not expired.

### Relevant Facts

Plaintiff transferred to Pontiac in November 2013 (Deposition of Joshua Kruger, Doc. 152-1 at 3).   Plaintiff testified he sought approval for High Holy Day religious feast trays in 2014 or 2015 through correspondence with Chaplain Kennell (who is deceased and no longer a defendant) (*id* at 5-6).   The record includes a letter dated March 1, 2015, from Plaintiff to Chaplain Kennell inquiring about said feast trays (*see* Doc. 152-3 at 3-4).   Chaplain Kennell responded to Plaintiff on March 3, 2015, indicating that Plaintiff's request was being forwarded to Defendant Chaplain Keim, the Chief Chaplain of IDOC, for advice (Declaration of Joshua Kruger, Doc. 154 at p. 24, ¶ 30); *see* Doc. 154 at 33).   Plaintiff wrote another letter directed to Defendant Chaplain Keim on July 6, 2015, asking for an update on his request for religious feast trays (Doc. 152-3 at 5-7).   Plaintiff attests he also spoke with Chaplain Kennell inquiring about his ability to possess runestones, and Chaplain Kennell told Plaintiff they are not allowed pursuant to IDOC policy (Doc. 154 at p. 24 at ¶ 31).

The record also includes two grievances submitted by Plaintiff on January 8 and January 29, 2018 (Doc. 152-4 at 1-7).   In these grievances, Plaintiff asserts he is experiencing a "continuing violation" of his religious right to practice his faith and complains that the Religious Practice Advisory Board ("RPAB") and Chaplain Keim have failed to respond or act on Plaintiff's requests to fully practice his faith.   Plaintiff specifically mentions the possession of runestones, ability to engage in group worship, and the ability to receive feast trays on High Holy Days.

Plaintiff transferred from Pontiac to Menard Correctional Center ("Menard") in October

2015 (Doc. 152-1 at 6).

## Discussion

Although § 1983 does not contain an express statute of limitations, it is well established in this Circuit that the limitations and tolling laws in the state where the alleged injury occurred are applied.   *Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir. 1992).    Illinois law prescribes that actions for personal injury must be commenced within two years after the cause of action accrued; thus, this case is governed by a two-year statute of limitations period.    735 ILCS § 5/13-202; *see Ashafa v. City of Chicago*, 146 F.3d 459, 461 (7th Cir. 1998) (citations omitted).

Defendants assert that because Plaintiff was transferred from Pontiac to Menard in October 2015, all of his Pontiac claims had to accrue, at the latest, by the date of his transfer.    Defendants further conclude that because Plaintiff failed to attempt to exhaust his administrative remedies, there was no tolling of the limitations period and, as such, his filing of this lawsuit on February 28, 2018 was beyond the allowable limitations period and such claims are barred.

Accrual of claims is governed by federal law.    *Savory v. Lyons*, 469 F.3d 667, 672 (7th Cir. 2006).    A claim accrues when the plaintiff knows or should know that his or her constitutional rights have been violated.    *Id.* (internal quotation omitted).    A court engages in a two-part inquiry to determine the accrual of a claim.    *Id.* (citation omitted).    First, a court must identify the injury.    Then, the court must determine the date on which the plaintiff could have sued for that injury.    *Id.* (internal quotation omitted).    The Seventh Circuit, however, recognizes the "continuing violation doctrine," with regard to claim accrual.    The continuing violation doctrine is applicable in instances when the state actor has a policy or practice that brings with it a fresh violation each day.    *Id.* (citations omitted).    The Court finds this doctrine applicable in this

instance.   Although Plaintiff references both Pontiac and Menard in his complaint, the claims arising from each facility are not distinct and are based on what appears to be an IDOC-wide policy or practice rather than a policy or practice specific to Pontiac.   Defendants have not pointed to discrete acts attributable only to Pontiac.   There also does not appear to be a defendant whose claims arise from actions taken solely at, and attributable to Pontiac.   The crux of Plaintiff's complaint is the implementation or maintenance of system-wide practices or policies that Plaintiff contends inhibit his ability to practice his religion.   These policies appear to be ongoing at least through the date of filing.   Thus, this case presents a scenario in which there is a "fresh violation" each day.   In other words, this is an instance where it would be unreasonable to require Plaintiff to file a lawsuit each time he was denied the religious accommodations he sought from the IDOC. *See Heard v. Sheahan*, 253 F.3d 316, 318 (7th Cir. 2001) ("This refusal [to treat the plaintiff's medical condition] continued for as long as the defendants had the power to do something about his condition, which is to say until he left the jail. Every day that they prolonged his agony by not treating his painful condition marked a fresh infliction of punishment that caused the statute of limitations to start running anew.").

For these reasons, the Court finds Plaintiff's claims arising from his incarceration at Pontiac are not barred by the statute of limitations and summary judgment is not warranted on this basis.

### IV.   Personal Responsibility

Defendants assert that aside from Defendant Ewert, the record is void of evidence that the alleged constitutional deprivations Plaintiff complains of occurred at their direction or with their knowledge or consent.   Defendants assert there is no evidence they personally reviewed or

responded to any grievances or responses to grievances, or reviewed any letters submitted to the chaplains. Defendants Wills and Jeffreys assert that insofar as they, or someone with their signature authority, reviewed Plaintiff's May 29, 2020 grievance regarding his Valnut medallion, this is insufficient to establish personal involvement. No affidavit was submitted by Wills or Jeffreys to support this assertion.

Plaintiff disagrees and asserts that Defendants failed to contradict his deposition testimony and declaration regarding Defendants' personal involvement. Plaintiff also points to the 2015 letter in the record to Chaplain Keim, as well as other letters and documents that Plaintiff argues demonstrates knowledge of the claims at issue by Defendants.

### Relevant Facts

As mentioned above, following his transfer to Pontiac in November 2013 (Doc. 152-1 at 3), Plaintiff sought approval for High Holy Day religious feast trays in 2014 or 2015 through correspondence with Chaplain Kennell (*id.* at 5-6). The record includes a letter dated March 1, 2015 from Plaintiff to Chaplain Kennell inquiring about said feast trays (*see* Doc. 152-3 at 3-4). Chaplain Kennell responded to Plaintiff on March 3, 2015 indicating that Plaintiff's request was being forwarded to Defendant Chaplain Keim, the Chief Chaplain of IDOC, for advice (Declaration of Joshua Kruger, Doc. 154 at p. 24, ¶ 30); *see* Doc. 154 at 33). At his deposition, Plaintiff testified that Kennell also told Plaintiff he would forward Plaintiff's request to the Religious Practice Advisory Board ("RPAB"). Plaintiff wrote another letter directed to Defendant Chaplain Keim on July 6, 2015 asking for an update on his request for religious feast trays (Doc. 152-3 at 5-7). Plaintiff attests he also spoke with Chaplain Kennell inquiring about his ability to possess runestones, and Chaplain Kennell told Plaintiff they are not allowed pursuant

to IDOC policy (Doc. 154 at p. 24 at ¶ 31).

At his deposition, Plaintiff testified he submitted written requests for religious accommodations soon after he was transferred to Menard in October 2015 (Doc. 152-1 at 6).   He sent these letters of request to the wardens and the chaplains (*Id.*).

The record includes a memorandum sent to Plaintiff from Defendant Kimberly Butler, the Menard Warden at the time, dated May 18, 2016, in which Butler indicates she is in receipt of Plaintiff's correspondence regarding his personal property concerns and asserts that "[a]llowable items are currently being reviewed" (Doc. 154 at 35).   The record also includes a letter directed to Warden Lashbrook from Plaintiff dated August 1, 2017 (*see id.* at 37-38).   The letter was stamped as "Received" by the "Warden's Office" at Menard on August 7, 2017.   In this letter, Plaintiff asserts he has sought approval for his religious practice requests from the chaplain since his transfer to Menard, but to no avail.   Plaintiff details his filing of grievances and letters for the same.   There is no mention of the medallion issue.   On August 29, 2017, Defendant Howard Harner, a chaplain at Menard, approved Plaintiff's request for a religious diet (*see id.* at 39). Defendant Chaplain Claycomb sent Plaintiff a letter that was stamped as "Received" on March 29, 2018 regarding a dietary substitution for Plaintiff's "Midsummer Feast" (*see id.* at 47).

A grievance dated May 29, 2020, submitted by Plaintiff concerning the confiscation of his "religious necklace," is also in the record (*see* Doc. 152-4 at 14-18).   Plaintiff's counselor responded to this grievance on June 2, 2020, and the Grievance Officer recommended that it be denied on June 5, 2020.   The CAO signed in concurrence with the Grievance Officer's recommendation on June 11, 2020.   The signature reads "A. Wills" with the appearance of additional initials at the top-right of the signature.   Sherry Benton, on behalf of the ARB, denied

the grievance on November 13, 2020 finding the issue was appropriately addressed by the facility. IDOC Director Jeffreys concurred with the denial.   The signature read "Rob Jeffreys," with what appears to be the initials "edw" immediately following the signature.

Plaintiff's response to Defendants' motion for summary judgment also included emails documenting Defendant Keim's inquiry into Plaintiff's request to possess runestones (*see* Doc. 154 at 59-61).   More specifically, Defendant Keim sought assistance from "Legal and the Religious Practice Advisory Board" to address the issue of an inmate's possession of runestones on May 25, 2016.   Keim's email was sent to Reiko Suber, Kimberly Butler, George Adamson, Howard Harner, and James Claycomb.   George Adamson provided a response, as did Reiko Suber (who is not a named defendant).

### Discussion

Defendants are correct insofar as liability under § 1983 is predicated on a defendant's personal involvement in the alleged constitutional violation.   *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003) (citations omitted).   To be personally responsible, an official "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye."   *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009) (quoting *Johnson v. Snyder*, 444 F.3d 579, 583 (7th Cir. 2006) (citing *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)).

Defendants' motion is unclear as to whether they seek summary judgment based on Plaintiff's purported failure to demonstrate their personal liability on each count.   Because the only proper defendants for Plaintiff's RLUIPA claims in Counts Two and Three are those defendants that can ensure injunctive relief is carried out, and said defendants are only sued in their official capacity, any request for summary judgment on Plaintiff's RLUIPA claims based on

personal liability is denied.

With regard to the remaining First Amendment claims, Defendants' argument is generally that the "record is void of evidence that any of the alleged conduct causing the constitutional deprivations occurred at any of the Defendants' direction or with their knowledge and consent." Thus, Defendants assert there is an absence of evidence supporting an essential element of Plaintiff's claim.   If a party chooses to make such an argument regarding the absence of evidence, the burden at summary judgment on the moving party is not "onerous" and may be discharged by "showing," or "pointing out" to the district court, that there is an absence of evidence to support the nonmoving party's case.   *Modrowski v. Pigatto*, 712 F.3d 1166, 1169 (7th Cir. 2013) (internal quotations removed).   Defendants, however, still bear "the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits if any, which it believes demonstrate the *absence* of a genuine issue of material fact."   *Celotex*, 477 U.S. at 323 (internal quotation omitted).

In support of their summary judgment motion, Defendants point to scant evidence to support the absence of personal liability.   Indeed, Defendants cite only generally to Exhibits C and D.   The letters and grievances included in Exhibits C and D demonstrate certain attempts by Plaintiff to communicate his complaints regarding his religious accommodations to certain individuals.   Defendants' reliance on this evidence does little to prove an absence of personal liability.   However, insofar as Defendants attempt to point out the same, Plaintiff must "make a showing sufficient to establish the existence" of this element of his case.   *Modrowski*, 712 F.3d at 1169.   The Court considers, then, whether the evidence in the record, when considered in the light

most favorable to Plaintiff, could demonstrate personal liability on behalf of Defendants.

In responding to Defendants' motion, Plaintiff asserts his deposition testimony and declaration have not been contradicted by any evidence submitted by Defendants.   Plaintiff also asserts that his deposition and other documents in the record establish that Keim, Adamson, Butler, Lashbrook, Kennedy, Harner, Claycomb, Easton, Norman-Reees knew about the denials regarding his requests for religious accommodations and turned a blind eye to the same.

In reviewing the record, Plaintiff's deposition testimony sets forth some evidence that has not been contradicted by Defendants that he requested religious accommodations from the "wardens and chaplains" at Menard upon his transfer.   The Court finds this sufficient, in light of Defendants' failure to contradict the same, that Defendants Lashbrook and Butler (both wardens at Menard at times relevant), and Defendants Harner and Claycomb (both chaplains at Menard at times relevant) had actual knowledge of Plaintiff's complaints regarding his religious accommodations at issue in Count One and failed to address the same[2], suggesting they either approved or turned a blind eye to the allegedly unconstitutional restrictions being placed on Plaintiff's religious faith.

Documentary evidence in the record also supports a finding that Defendants Lashbrook, Butler, Harner, Claycomb, Keim, and Adamson had notice of Plaintiff's religious practice violations at issue in Count One and failed to act.   Defendants make no argument with regard to the documents in the record evidencing this potential notice; therefore, the Court finds the record sufficient to establish a basis for personal liability.   *See Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015) (holding that a grievance could put an official, who reviews such grievance, on notice of

---

[2] Defendants Hutchinson and Wills were also wardens at Menard at times relevant.   However, these Defendants were not named in Count One of the Third Amended Complaint.

a constitutional deprivation such that the grievance official's "refusal or declination to exercise the authority of his or her office may reflect deliberate disregard.") (quoting *Vance v. Peters*, 97 F.3d 987, 993) (7th Cir. 1996)).

Also in the record are documents evidencing potential notice of the alleged unconstitutional policy at issue in Count Three to Defendants Butler, Wills, and Jeffreys. Again, Defendants failed to set forth any evidence to contradict the inference of notice and failure to rectify the purported constitutional violation. As such, the Court finds sufficient evidence in the record to establish a basis for personal liability against Defendants Butler, Wills, and Jeffreys with regard to Count Three.

The record, however, is devoid of any evidence to establish personal liability, or even notice of the alleged constitutional deprivations, with regard to Defendants Jeffreys (Count One), Baldwin (Counts One and Three – First Amendment claim), Hutchinson (Count Three), Lashbrook (Count Three), Williams, McCarty, Beekman, Walker, Parrack, Easton, Lambert-Goheen, Norman-Rees, and Wilhelm. As such, the Court shall enter summary judgment in favor of these Defendants (on the counts specified, as applicable) finding no evidence to demonstrate they were personally involved in the alleged constitutional violations.

### V.   Plaintiff's Free Exercise of His Religion

Under the First Amendment, prisoners enjoy a right to the free exercise of their religion. *Vinning-El v. Evans*, 657 F.3d 591, 592-93 (7th Cir. 2011). However, a prison may impose restrictions on the exercise of religion that are reasonably related to the legitimate penological objectives of the state. *Tarpley v. Allen County, Ind.*, 312 F.3d 895, 898 (7th Cir. 2002) (citations omitted). In determining whether an asserted justification is rationally related to a legitimate

Page **16** of **21**

penological objective, courts consider whether there are alternative means of exercising the right that remain open to the inmate, the impact an accommodation of the asserted right would have on guards and other inmates, and whether there are "obvious alternatives" to the restriction.   *Ortiz v. Downey*, 561 F.3d 664, 669 (7th Cir. 2009).

Defendants assert summary judgment in their favor is warranted because the record is void of any evidence that Defendants imposed any burden on Plaintiff's ability to possess runestones or runic flashcards, congregate to worship, or receive religious feast trays at Pontiac or Menard.   In support of this argument, Defendants assert there is no record that Plaintiff requested runestones or sought the ability to congregate to worship from facility staff while at Pontiac or Menard. Defendants further assert there is no record Plaintiff submitted requests for religious feast trays while at Menard, and insofar as there is documentation that Plaintiff submitted requests for religious feast trays at Pontiac, Defendants assert there is no evidence that the Warden of Pontiac or Defendant Keim were made aware of this request.   Thus, the crux of Defendants' argument is that Defendants could not have imposed a burden on Plaintiff's practice of religion because they were not aware of and, therefore, could not have refused or denied accommodations that were never requested.

The Court's analysis of Defendants' argument is abbreviated insofar as the Court has already determined there is at least some evidence that Defendants Butler, Lashbrook, Keim, Harner, Adamson, and Claycomb had notice of the issues set forth in Count One and failed to act or otherwise address Plaintiff's requests for religious accommodations.   Thus, there is at least some evidence in the record to demonstrate Defendants imposed a burden on Plaintiff's practice of his religion.   Based on this finding, the Court denies Defendants' request for summary judgment

on this issue.

### VI.   Religious Medallions

In addition to the First Amendment (detailed above), inmates are also afforded religious protections under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), which prohibits prisons receiving federal funds from imposing a substantial burden on an inmate's religious exercise unless prison officials can demonstrate that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.   42 U.S.C. § 2000cc-1(a).   Unlike cases arising under the Free Exercise Clause of the First Amendment, RLUIPA applies even where the burden on the prisoner "results from a rule of general applicability."   *Koger v. Bryan*, 523 F.3d 789, 796 (7th Cir. 2008).   In establishing a claim under RLUIPA, the plaintiff bears the initial burden of showing (1) that he seeks to engage in an exercise of religion, and (2) that the challenged practice substantially burdens that exercise of religion.   42 U.S.C. §2000cc-1.   Once the plaintiff establishes his prima facie case, the defendants "bear the burden of persuasion on any [other] element of the claim," *id.*, namely, whether their practice "is the least restrictive means of furthering a compelling governmental interest."   *Koger*, 523 F.3d at 796.

Defendants assert that the record establishes Plaintiff's necklace with a Valnut medallion was confiscated because it posed a safety and security threat after evaluation by property officers. Defendants contend that Plaintiff was offered the option of having the necklace picked up or he could pay to have it mailed outside of the institution.   As such, Defendants contend confiscation of the necklace and medallion was the least restrictive means of advancing each facility's interest in safety and security and, as such, there was no violation of RLUIPA or the First Amendment.

In support of this assertion, Defendants rely exclusively on Plaintiff's May 29, 2020 grievance (*see* Doc. 152-4 at 14-18).   In response to this grievance, the counselor indicated that per "property" the necklace was denied "due to the safety and security of the institution/does not meet guidelines offender may chose [sic] to send the property home or destroy it."   The Grievance Officer found the counselor responded to this grievance appropriately and indicated that Personal Property confiscated the dog tag medallion and chain because it was too thick and not allowed for the safety and security of the institution.   The Grievance Officer cited to the "Jewelry policy" and "DR 535."   Defendants contend this is evidence that the jewelry was evaluated by property officers and deemed to be a safety and security concern.

Defendants' argument is not properly supported.   Notably, the *only* evidence Defendants rely on to substantiate their claim that Plaintiff's medallion was denied due to "safety and security concerns" (that the Court infers Defendants would contend is a compelling governmental interest), is a grievance, the contents of which the Court cannot accept as fact because it is hearsay.   *See Heard v. Shicker*, Case No. 14-cv-1027-JBM, 2018 WL 11272881, at *2 (C.D. Ill. April 23, 2018) (Grievances and other written correspondence with IDOC officials are inadmissible hearsay and cannot be used to support the truth of what is contained in them).   The hearsay nature of the statement that Defendants rely on is particularly tenuous, as said statement comes from the counselor who purportedly communicated with "property" that the necklace was denied for safety and security concerns.   Simply put, Defendants have not presented any competent evidence that the medallion was confiscated due to safety and security concerns.   Defendants' motion also fails to address the nuance of Plaintiff's claim as a policy and practice complaint.   Indeed, as written, Count Three concerns the purported policy and practice of refusing all Asatru-Odinist prisoners

the right to wear their religion medallions that was adopted and implemented at Menard. Defendants' motion is focused solely on Plaintiff's possession of his Valnut medallion and wholly fails to address their involvement in implementing, condoning, or maintaining a policy that caused the medallion to be denied.   For these reasons, summary judgment is not warranted on this basis.

<u>**Conclusion**</u>

Based on the foregoing, Defendants' Motion for Summary Judgment (Doc. 151) is **GRANTED IN PART AND DENIED IN PART**.  The Clerk of Court is directed to enter judgment in favor of Defendants Alyssa Williams, Leslie McCarty, Echo Beekman, Lu Walker, Jennifer Parrack, Christopher Easton, Lauren Lambert-Goheen, Karen Norman-Rees, Chase Wilhelm, Robert Jeffreys as to Count One, John Baldwin as to Counts One and Three (only in his individual capacity), Jeffrey Hutchinson as to Count Three, and Jacqueline Lashbrook as to Count Three and against Plaintiff Joshua W. Kruger at the close of this case.

Plaintiff shall proceed in this matter on the following claims:

Count One:   First Amendment claim against Butler, Lashbrook, Keim, Adamson, Claycomb, and Harner for refusing to allow Plaintiff to fully practice his Asatru-Odinist faith by prohibiting him from possessing runestones or runic flashcards, disallowing congregate worship, and denying religious feast trays.

Count Two:   RLUIPA claim against Jeffreys, Baldwin, and Keim for refusing to allow Plaintiff to fully practice his Asatru-Odinist faith by prohibiting him from possessing runestones or runic flashcards, disallowing congregate worship, and denying religious feast trays; and

Count Three: RLUIPA claim against Baldwin and First Amendment claim against Jeffreys, Butler, Wills, and Ewert for enacting, adopting, and/or enforcing a policy and practice of refusing all Asatru-Odinist prisoners the right to wear their religious medallions while at Menard.

The Warden of Pontiac remains a defendant for purposes of carrying out injunctive relief.

**IT IS SO ORDERED.**

**DATED: January 9, 2023**

*s/ Reona J. Daly*

**Hon. Reona J. Daly**
**United States Magistrate Judge**